Cabe, J.
I think the decree in this case intircly correct. Taking up the case, either upon the bill and answer, or upon the whole evidence, there is no ground furnished for a rescission of the contract, in any stage ; but after it was executed by the giving and receiving a deed, taking possession, paying good part of the purchase money, executing bonds for the balance, and a deed of trust to secure the payment, there is not the shadow of a cause for rescission; more especially as the purchaser acquiesced upwards of four years after the fraud (if there was one) was known to him, during which time a great change had taken place throughout the country, affecting deeply the value of lands; and most *672 especially, after he had sold part of the land. The bill, then, so far as it related to the main end of it, was never sustainable; and taking away that ground, there could be no propriety in filing a bill in equity, for the sole purpose of obtaining compensation in damages for an alleged fraud, and to tie up a part of the purchase money until these damages were liquidated. This is law too well settled to require that I should cite cases to support it. Upon the subject of the fraud charged, I do not choose to pronounce an opinion. The appellant having a right to sue at law for it, ought to go before that tribunal, without prejudice from an intimation of opinion by this court; and the appellees have an equal right not to be prejudged on that point.
Cabell, J. J intirely approve the decree.
Tucker, P.
It is obvious, that no rescission of the contract could have been decreed, or properly asked for, in this case. If the conduct of the purchaser—his delay, his acquiescence, and his sale' of part of the land—were not conclusive against the right to rescind in any form in which the bill might have been filed, it is certain," no such right could have been enforced in the form in which this bill has been framed. In the question of rescission, the heirs of Michael Hogshead, the actual vendor, have a deep interest. Whether Thomas and John Hogshead are the heirs and the only heirs of their father, does not appear. Even if they be, they are not made parties in that characters Had the facts of the case justified a rescission, a re-conveyance by the purchaser to Michael’s heirs must have been decreed. But as the court knows not who they are, and as they are not before it, this could not have been done : for, peradventure, they might have been interested in resisting the rescission, and might have been more fortunate in combating the pretensions on whichpt was asked.
As the form of the proceeding, then, excludes the possibility of rescission, the bill can only be looked on as a bill *673 for an injunction to restrain the payment of an unpaid balance of purchase money, until a claim for unliquidated damages for the alleged fraud shall have been settled by an issue to be directed by the court. But it has been long settled that unliquidated damages cannot be set-off in equity. Duncan v. Lyon, 3 Johns. C. R. 351. Livingston v. Livingston, 4 Id. 287. Webster v. Couch, 6 Rand. 519. The party aggrieved should have instituted the proper proceedings and ascertained his damages, before he attempted to arrest the payment of the instalment of the purchase money remaining due. Were a contrary practice allowed, an instalment of 3000 might be tied up, though the damages might eventually be only as many cents, or nothing.
Moreover, I take it, a bill for damages only will not lie in equity. The court could only ascertain those damages by sending the case to a court of law. To that court, therefore, tho party should apply, instead of clogging the litigation by a suit in equity, which could only end where he ought to have begun. Would it be just (even though the fraud be established) that the defendants should be charged with the costs of this unnecessary proceeding ? I think not. Had an issue been directed, and found for the plaintiff, surely the plaintiff ought to be charged with the additional costs unnecessarily incurred by going through the court of chancery to get into the court of law; since he might at once have got into the court of law by issuing his writ for the deceit.
It is no answer to this view of the case, that the answer of the defendant might have been important: the case is not placed on that ground, nor do the facts justify its being now assumed; for there seems to be no deficiency of evidence as to the facts that really occurred in the transaction.
Whether the statute of limitations will bar any action at law which the appellant may now bring, it would be premature to say. But, though this inconvenience should follow, it ought not to lead the court to establish a precedent sustaining a mere action for damages in equity. Such a *674 proceeding has been questioned even in a suit for specific performance, where the defendant, after the bill was filed, had disabled himself to perform, and has been distinctly reprobated, where he had so disabled himself before filing the bill, and the plaintiff knew of the fact before he commenced the suit; for, says chancellor Kent, “ the case is then reduced to that of a bill filed for the sole purpose of assessing damages for a breach of contract, whigh is a matter strictly legal and not of equitable jurisdiction”—“If this court is to sustain such a bill, I do not see why it might not equally sustain one in every other case sounding in damages and cognizable at law.” Kempshall v. Stone, 5 Johns. C. R. 193. In Gwillim v. Stone, 14 Ves. 128. the bill as to the damages was dismissed, though the court exercised its jurisdiction in directing the contract to be delivered up. In the case at bar, as I have already shewn, the bill is, in effect, a bill for damages only. See also the commentary in Todd v. Gee, 17 Ves. 273. upon the case of Denton v. Stewart, Id. 276. in notis.
Decree affirmed.